UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
BANK OF AMERICA, N.A., individually
and a successor to LaSalle Bank,
National Association, a national
banking association,                            <u>MEMORANDUM AND ORDER</u>
                                                11-CV-0038 (DRH)(ARL)
                    Plaintiff,

       -against-

NEW YORK MERCHANTS PROTECTIVE CO.,
INC., a New York Corporation, NEW
YORK MERCHANTS ALARM RESPONSE, INC.,
a Delaware Corporation, and NY MERCH
PROT CO., INC., a Delaware
Corporation,

                    Defendants.
-----------------------------------X
A P P E A R A N C E S:

    Jean Marie Lucien Atamian, Esq.
    Attorney for Plaintiff
    Mayer Brown LLP
    1675 Broadway
    New York, New York 10019-5820

    Robert J. Ansell, Esq.
    Attorney for the Receiver Ronald J. Friedman
    Silverman Acampora LLP
    100 Jericho Quadrangle, Suite 300
    Jericho, New York  11753

    Gary Fischoff, Esq.
    Attorney for Wayne M. Wahrsager
    Steinberg, Fineo, Berger & Fischoff, P.C.
    40 Crossways Park Drive
    Woodbury, New York 11797

HURLEY, Senior District Judge

        This Memorandum and Order will address two of the

motions which are presently before the Court.  The first is the

letter application of Robert J. Ansell ("Ansell"), counsel for

the Receiver Ronald J. Friedman, Esq. (the "Receiver" or

"Friedman") for the Court to "so order" Friedman's decision to "terminate[] Wayne M. Wahrsager ["Wahrsager"] from his employment position with New York Merchants Protective Company, Inc. ['NYMP']." (Ansell's Apr. 15, 2011 Letter at 1.) The second motion is the converse of the first, consisting of Wahrsager's application for "a preliminary injunction restraining the Receiver from terminating Wayne Wahrsager." (Wahrsager's Apr. 18, 2011 Mem. in Supp., Table of Contents at i (all letters in upper case in the original)).

BACKGROUND

By complaint filed on January 5, 2011, the plaintiff, Bank of America, N.A. ("BOA") sued the captioned defendants for a sum in excess of $19,000,000.00 allegedly due under a promissory note and loan agreement entered into between a predecessor corporation of BOA and NYMP. In that pleading, as well as in BOA's application bearing the same date seeking the appointment of a receiver for NYMP, plaintiff contends that the debtor corporation and others committed fraud - via the kiting of checks and overstating NYMP's monthly revenue - so that "an aggregate principal balance on the Revolving Loans [to NYMP mushroomed to] more than twice the lending limit set by the loan agreement." (Compl., ¶ 5.)

Based on, inter alia, NYMP's deteriorating financial condition, coupled with the defaulted multi-million dollar

indebtedness, and purported concomitant fraud, the Court - after hearing oral argument on behalf of the applicant and on behalf of the defendant corporations - granted BOA's application on January 5, 2011 by appointing Friedman as the Receiver for NYMP pending a full hearing scheduled on January 18, 2011. However, after the Court orally listed Friedman's interim authority on the record and entered a written order in conformity therewith, (Docket # 12), I received a letter dated January 14, 2011 from defendants informing me that they consented to the appointment of the receiver without any admission of wrongdoing. I thereupon cancelled the hearing scheduled for January 18th and ordered the parties to submit a proposed order based on their agreement. They did so, which order provided that Friedman's status as Receiver would continue "until [Defendants' businesses were] sold or further Order of the Court" and also set forth the parties' stipulation as to the nature and breadth of his powers. (See Docket # 11, electronically So Ordered by the Court on January 19, 2011.) That consent Order, i.e. the one bearing Docket # 11, is the Order currently in effect. It provides in pertinent part as follows:

> 6. The Receiver is hereby authorized to operate and manage Defendants' businesses until sold or until further order of the Court.
>
> 7. The Receiver is hereby authorized in his discretion to remove Defendants' current management (including, but no limited to, Wayne M. Wahrsager, Mark Fischer and Bert Wasserman) from their

management and/or other employment positions with
Defendants and, in the Receiver's sole discretion,
to retain or remove any other employee, manager or
agent of Defendants from his or her positions.

DISCUSSION

Following receipt of Ansell's letter of April 15, 2011 pertaining to Friedman's firing of Wahrsager, Gary C. Fischoff, Esq. ("Fischoff") filed an April 18th letter-response at 9:41 a.m. opining that his client could not be removed as an officer of NYMP absent a vote of the Board of Directors, citing New York State Business Corporation Law ("BCL") § 716. The issue thus joined, the Court, later on the morning of April 18th, set the matter down for a hearing on April 20, 2011, with the subject being the propriety of Friedman's terminating Wahrsager's employment with NYMP.[1] Immediately prior to taking testimony at

---

[1] Thereafter, viz. late in the afternoon of April 18th, defendants presented, and I signed an Order to Show Cause which sought (a) a curtailment of the Receiver's powers, (b) injunctive relief, as previously noted, preventing the Receiver from firing Wahrsager, and (c) "an Order ordering the Receiver to seek an application before this Court approving his compensation and the compensation of his law firm and agent TRG Associates." See Defs.' Apr. 18, 2011 O/T/S/C/ at 2. That Order to Show Cause was returnable on April 27, 2011. On that latter date, item (a) was denied, while item (c) was granted in part, both from the bench and for reasons reflected in the transcript of the April 27, 2011 proceeding.

With respect to the Receiver's firing of Wahrsager - and given the overlap between the request in the Receiver's April 15th letter and item (b) in defendants' Order to Show Cause - I asked the parties on April 27th whether either cared to add testimony to the April 20th hearing record. Neither side elected to do so and, accordingly, the testimonial component of the

the hearing, the Court ruled that BCL § 716 did not preclude the subject firing. (Apr. 20, 2011 Tr. at 8); see generally Graselli Chemical Co. v. Aetna Explosives Co., Inc., 252 F. 456, 459 (2d Cir. 1918).

At the April 20th hearing two witnesses testified, viz. Friedman called by Ansell and Wahrsager called by Fishoff. Friedman testified that Wahrsager was a disruptive influence at the work site to the extent that his presence interfered with the Receiver's ability to discharge his responsibilities. Along those lines, Friedman testified that Wahrsager provided the person handling the accounts payable ledger with "invoices that are not properly payable by New York Merchants." (Tr. at 16.) On other occasions, he "encouraged certain employees to quit and look for another job." (Id. at 12.) Friedman also complained that Wahrsager refused to take direction from him, or from his consultant, TRG, acting instead as if he, Wahrsager, was still in charge of NYMP. By way of example, Friedman said that Wahrsager spoke to him about a prior NYMP employee who was reportedly defrauding the corporation via the unauthorized use of a gasoline credit card, and of his intention to report that individual to the police. In response, Friedman indicated that before

---

parties' respective positions concerning Wahrsager's employment with NYMP consists solely of that elicited during the April 20, 2011 hearing.

Wahrsager did so he should provide the pertinent documentation to him for his review.  That directive was ignored by Wahrsager who filed the criminal complaint, minus pre-clearance from Friedman.  By way of another example, Friedman reports that Wahrsager sent billing invoices to NYMP customers in the beginning of April, even though TRG previously told him that "we didn't want to process the bills on the very first day of the month because we still had some internal updating to do to the books of accounts so that certain customer's accounts would be appropriately credited." (Id. at 13-14.)

       Immediately following the conclusion of Friedman's testimony, Wahrsager was called to the stand by Fischoff.  Mr. Wahrsager testified he had run NYMP since he purchased the company in 1988.  He complained that Friedman spent "less than an hour a week" at NYMP, placing the operation of the company in the hands of "TRG" which he characterized as "basically ruin[ing] my company." (Id. at 64.)  For many of the disruptive incidents cited by the Receiver during his testimony, Wahrsager provided an alternate interpretation or a different rendition regarding the subject events.  Thus, for instance, as to the April billing episode, Wahrsager testified that, Brady, i.e. the on-site principal of TRG, asked him if he would "be so kind as to run them for [him]" and that, after he did so, and so advised Friedman, Friedman thanked him for his efforts. (Id. at 67-68.)

Mr. Wahrsager also explained that Senior Care 911 LLC, ("Senior Care"), which "provides personal emergency response systems to . . . elderly people . . . .," maintains a phone on his desk in the same building as houses NYMP's operations to receive "sales related [and] billing related" inquiries. (Id. at 71.) Moreover, Senior Care's computer records are integrated with NYMP's, thus generating problems for Wahrsager in operating Senior Care should he be banned from the shared premises absent some type of temporary, problem-specific accommodation being provided.

I found Friedman's testimony to be credible, even though in some instances his information was derived from third parties, primarily Brady. Mr. Wahrsager's testimony was credible on peripheral matters, such as his testimony about not using ethnic slurs in referring to a NYMP Hispanic employee. But as to the central issue concerning the caliber of the Receiver's performance, his condemning perceptions are out-of-sync with reality for numerous reasons, including his inability to accept the Receiver as now being at the helm of NYMP. And beyond that, it is clear from the testimony of Friedman and Wahrsager that considerable friction exists between them to the detriment of the corporation and the receivership, which friction is attributable to Wahrsager's disruptive conduct at the work site.

Much of the friction emanates from what I perceive to

be obvious, i.e. that Wahrsager not only believes he should still be in charge of NYMP, but also that Friedman is a dilettante interloper who, acting in cahoots with TRG, is running NYMP into the ground.  That position is problematic at best in that, on the information that has thus far surfaced, NYMP, with Wahrsager in charge, had essentially lethal financial, and other problems before Friedman arrived on the scene. (See, e.g., Exhs. E and F to Atamian Decl., submitted in Opp'n to Defs.' Motion.)  More importantly, it is evident from the hearing testimony that Wahrsager will not take directions from the Receiver or from the Receiver's consultant, TRG, in those instances where he harbors a different view than theirs.  Simply put, Friedman's ability to discharge his obligations as Receiver is being significantly undermined by Wahrsager's presence at NYMP.

That being said, I note that under the Order delineating the powers of the Receiver, more particularly paragraphs 6 and 7 previously quoted, the Receiver had the right to terminate Wahrsager's employment at NYMP notwithstanding his status as an officer and director of the corporation.  That Wahrsager now disagrees with the initially consented-to powers vested in the Receiver is not germane given that defendants' efforts to have those powers reduced was rejected by the Court in

its April 27, 2011 bench decision for a failure of proof.[2] Such being the case, Wahrsager was, and remains required to abide by the directions issued by the Receiver. In that regard, Wahrsager shall "vacate himself from the premises [i.e. 75 W. Merrick Road in Freeport] and . . . to turn over his keys and access card to the building" [subject to the limited exception provided infra] as directed by the Receiver on April 15th. (Tr. at 10.) To the extent he, upon the advice of counsel, has declined to follow that direction absent a Court order (see id. at 12, and the last paragraph of Fishoff's Apr. 15, 2011 Letter to Ansell), this decision provides that order. Additionally, Wahrsager is hereby ordered, effective immediately, not to interfere, directly or indirectly, in the Receiver's operation of the business.

The above referenced exception to the vacatur order has to do with the fact that Senior Care, a small business apparently owned by Wahrsager and "Mr. Fisher," (Tr. at 32), maintains the previously described phone line in the building in which NYMP is located, plus its "books and records and computerized systems . . . are all intertwined . . . with New York Merchants,"[3] (id. at 32). Additionally, the Receiver is under the impression that

---

[2] For that reason, viewed in conjunction with the breadth of the Receiver's powers, both as amplified during the course of the Court's April 27, 2011 bench decision, defendants' motion for a preliminary injunction preventing the Receiver from firing Wahrsager is denied.

[3] "New York Merchants" and NYMP are one and the same.

Senior Care utilizes NYMP's employees to run its operation. (Id.)  The parties are directed, acting through counsel, to take the steps necessary on or before May 13, 2011 to separate the two entities consistent with the Receiver's April 15th direction that Wahrsager "vacate . . . the premises." (Id. at 10.)  Wahrsager shall be permitted, notwithstanding that directive, to be present at currently shared premises, to assist in the accomplishment of the above task but solely for that purpose.  Upon the completion of that task, or by 5:00 p.m. on May 13, 2011, whichever <u>first</u> occurs, Wahrsager shall leave the premises at 75 W. Merrick Road, Freeport, New York not to return absent prior written permission being granted by the Receiver or this Court.

CONCLUSION

In sum, the Receiver had the right on April 15th to terminate Wahrsager's employment with NYMP.  Additionally, I find that the Receiver will be significantly impeded in doing his job unless Wahrsager is directed to remain away from the work site during the pendency of the receivership.  Accordingly, Wahrsager shall vacate, and remain away from the premises as detailed above.

SO ORDERED.

Dated:  May 2, 2011
        Central Islip, New York

                                            /s/
                                    DENIS R. HURLEY
                                    United States District Judge