```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BANK OF AMERICA, N.A., *individually and
as successor to LaSalle Bank, National
Association, a national banking association,*                ORDER
                                                             11 CV 38 (DRH)(ARL)
                            Plaintiff,

            - against -

NEW YORK MERCHANTS PROTECTIVE
CO., INC., NEW YORK MERCHANTS
ALARM RESPONSE INC.; and NY
MERCH PROT CO., INC.,

                            Defendants.
----------------------------------------------------------X
```

**HURLEY, District Judge:**

Before the Court is the application of non-party Ruskin Moscou Faltischek, P.C. ("RMF"), defendants' prior counsel, for an Order compelling Ronald J. Friedman ("Friedman"), defendants' Receiver, to pay the attorney's fees for RMF's legal work performed between September 24, 2010[1] and July 6, 2011. For the reasons stated below, the application is denied.

BACKGROUND

The facts underlying this case are set forth in detail in numerous prior Orders issued by this Court. A familiarity with such facts is therefore assumed for present purposes.

---

[1] Although the affidavit submitted in support of this application identifies this first date as September 24, 2011, the Court assumes that it meant to read September 24, 2010. (*See, e.g.*, Engagement Letter dated 9/23/10, attached to Wurst Aff. as Ex. B.)

This action was commenced on January 5, 2011 with the simultaneous filing of a complaint and a request for an Order to Show Cause regarding, *inter alia*, the appointment of a receiver for the three defendant corporations. A hearing was held that same day to address plaintiff's proposed Order to Show Cause. In the months prior to the commencement of this action, RMF had been retained to "assist Defendants in a workout of its loan with Bank of America." (Affidavit of Jeffrey A. Wurst ("Wurst Aff.") ¶ 2.) When defendants were initially served with the papers in this case, they apparently did not have time to retain litigation counsel. Defendants therefore turned to RMF and requested that the firm make a "limited appearance" on their behalf at the initial January 5, 2011 hearing. Jeffrey Wurst, Esq. ("Wurst") of RMF agreed to appear. (*Id.* ¶ 3.)

The Court made a number of rulings on the record at that initial hearing and scheduled a subsequent plenary hearing for January 18, 2011. (Minute Entry dated 1/5/11, docket no. 5.) On January 10, 2011, plaintiff filed a proposed injunctive order, which included the powers to be conferred on the proposed receiver. Wurst, on behalf of defendants, responded with a red-lined version of proposed changes. (*See* Letters dated 1/10/11, docket nos. 7-8.) By letter dated January 14, 2011, Wurst informed the Court that defendants had consented to the appointment of a Receiver through agreed-upon language set forth in a proposed stipulated order. The Court so ordered the parties' stipulated order appointing Friedman as Receiver, and cancelled the January 18, 2011 hearing.

In the weeks that followed, Wurst also negotiated three separate stipulated extensions of time of defendants' deadline to respond to the complaint. Each extension

was approved by the Court on January 28, 2011, February 9, 2011, and February 17, 2011. (*See* docket nos. 14-16.) Shortly thereafter, Wurst moved to withdraw as defendants' attorney. At a hearing on March 2, 2011, the Court granted the motion and stayed the case for three weeks to allow defendants time to find new counsel. (Minute Entry dated 3/2/11.) The Court's stated grounds for granting the motion was defendants' failure to pay its legal fees to RMF. (Transcript of 3/2/11 Hearing at 5.) RMF's concomitant request for a charging lien against the unpaid balance was denied without prejudice. (*Id.*)

After withdrawing as counsel for defendants, RMF made "repeated" demands to Friedman for payment of the outstanding balance owed to the firm. (*Id.*) However, with the exception of a single $7,500 payment on January 18, 2011 for work performed prior to the commencement of this action, the Receiver has made no payments to RMF for their legal work. (Wurst Aff. 15.)

On June 29, 2011, the Court directed the Receiver to allocate $10,000 from the company's gross revenues to retain Jeffrey G. Stark, Esq. "to represent all three [corporate] defendants in [this] action for the limited purpose of evaluating those companies' potential defenses to this action." (Order dated 6/29/11 at 3.) The Court issued this Order primarily out of concern for the potential conflict of interest in permitting counsel for Wayne Wahrsager, co-owner of defendant New York Merchants Protective Co., Inc. ("NYMP") and the individual whose alleged fraudulent activity led, in large part, to the commencement of this lawsuit, to simultaneously represent Wahrsager and the defendant companies. Days later, on July 6, 2011, Wurst sent a letter

3

to Friedman demanding payment of his firm's outstanding balance, citing the June 29, 2011 Order. (Wurst Aff. Ex. F.) The letter noted that the Order set aside money in order for Stark to evaluate the company's potential defenses to the action – the very same task RMF claimed in its letter to have performed during their time as litigation counsel. (*Id.*)

Having still received no payment, RMF filed the instant motion seeking $20,842.99 in for its legal work, $5,597.98 in fees for bringing the present motion, and $289.21 in expenses. (Wurst Aff. ¶ 29.)

DISCUSSION

The Court notes at the outset that the Order of Appointment vests the Receiver "with the power and authority to pay, *in his discretion*, the reasonable and necessary expenses of operating the Defendants' business." (Order of Appointment ¶ 15 (emphasis added).) This language was negotiated and stipulated to by Wurst in the first weeks of this case.[2]

Generally, the creation of a receivership does not impute the preexisting obligations and contracts of the defendant to the receiver. An equity receiver is therefore not responsible for contracts entered into by the defendant prior to the receiver's appointment, unless the receiver later affirmatively ratifies that contract. *See* Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers §§ 423, 428, 561 (3d ed.

---

[2] The Court further notes that a version of the Order of Appointment drafted by the Court vested the Receiver with substantially fewer rights and powers than the version negotiated by Wurst on behalf of defendants. (*Compare* docket nos. 11 and 12.) Nevertheless, because the latter was agreed to by the parties, the Court so ordered that version, which remains the operative Order of Appointment in this action. (See discussion in Order dated 5/2/11 at 3-4.)

1992) (citing at §561 *United States v. Illinois Surety Co.*, 238 F. 840, 841 (D.N.C. 1917)). Where the contract calls for the payment of money, the creditor cannot compel the receiver, which is an arm of the court, to make such payments. *Id.* at § 423.

     NYMP's obligations to RMF were established through a retainer agreement signed by its president, Wayne Wahrsager, on September 23, 2010, more than three months before the Receiver was appointed. (Wurst Aff. Ex. B.)  Further, Wurst's appearance in this case came at the request of defendants, not the Receiver.  In fact, Wurst's role at that time was primarily to negotiate the powers of the Receiver with plaintiff.  Wurst appeared before the Court and emphasized that his appearance would be limited to addressing plaintiff's application for the appointment of a receiver, as he was concerned that he would not be paid for his services.  (*See* Transcript of 3/2/11 Hearing at 3, Wurst Aff. Ex. D.)   Because of the timing of RMF's work in this case, it does not appear that the Receiver took any action to ratify or affirm RMF's preexisting contractual relationship with defendants, nor does RMF proffer any argument or evidence to that effect.  Moreover, based on Wurst's representations to the Court at hearing, he was aware that the subject corporations' financial health was imperiled and that the likelihood that he would be compensated for his work was in question.  The Court therefore declines to Order the Receiver to pay RMF its outstanding balance with defendants from such monies.  This ruling, of course, does not extinguish any direct claim for payment that RMF may have against the defendant corporations.

     In rendering this decision, the Court feels it necessary to address one point raised by RMF in both its July 6, 2011 letter to Friedman and in the present motion.  As noted

above, the Court directed the Receiver to retain the services of outside counsel to evaluate the corporate defendants' potential defenses to this action. RMF insists that it did just that when it first represented defendants here. The crucial distinction is that the services rendered by RMF pertained primarily to the appointment of a receiver and the powers that a receiver would possess. While RMF negotiated these terms on behalf of defendants with plaintiff, those negotiations did not implicate the Court's concerns which later resulted in the appointment of Stark. The corporations, as separate legal entities from Wayne Wahrsager—who initially engaged the services of RMF—may have possessed certain defenses to the action, including the accuracy of the total sum sought to be recovered by the Bank. Further, given Wahrsager's alleged conduct leading to this action, the corporations conceivably could assert third-party claims against Wahrsager himself.

Moreover, Receivers are appointed as an arm of the Court, and operate at the pleasure and under the supervision of the Court. Therefore, any order appointing a receiver and vesting certain powers therein, is ultimately an act of the Court, not the adversarial act of a party. The order directing the Receiver to retain counsel pertained the defenses of the subject corporations against allegations lodged in a complaint. Although RMF may have had the interests of defendants in mind when it negotiated the Order of Appointment, it did not actually assert "any potential defenses to this action." (*See* Order dated 6/29/11 at 3.) In fact, during their representation, RMF did not file an answer or move to dismiss any of the claims. Rather, it sought extensions of time to respond to those claims. While these acts no doubt offered some benefit to defendants, what is

important for the present consideration is the distinction between evaluating or asserting defenses to the claims of an adversary, and the powers of a receiver who is appointed by and overseen by the Court. The Order to retain counsel concerned the former, not the latter.

## CONCLUSION

Accordingly, RMF's application for attorney's fees is denied, as is its concomitant request to impose a lien.

SO ORDERED.

Dated: Central Islip, New York
       July 9, 2012

                                              /s/
                                        Denis R. Hurley
                                        Unites States District Judge